In the
United States Court of Appeals
for the Fifth Circuit

No. 25-30500

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

*versus*

LUIS ENRIQUE PADILLA,
*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:24-CR-257-1

ORIGINAL BRIEF FOR THE APPELLANT
LUIS ENRIQUE PADILLA

CRISTIE GAUTREAUX GIBBENS
Interim Federal Public Defender

DUSTIN C. TALBOT
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of
Louisiana
102 Versailles Blvd, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

In the
United States Court of Appeals
for the Fifth Circuit

---

No. 25-30500

---

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

*versus*

LUIS ENRIQUE PADILLA,

*Defendant - Appellant*

---

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:24-CR-257-1

---

## ORIGINAL BRIEF FOR THE APPELLANT
## LUIS ENRIQUE PADILLA

---

## CERTIFICATE OF INTERESTED PERSONS

---

Pursuant to Fifth Circuit Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

i

**Judges Below:**

> The Honorable David C. Joseph, United States District Judge
> The Honorable David J. Ayo, United States Magistrate Judge
> The Honorable Carol B. Whitehurst, United States Magistrate Judge (recused).

**Defendant - Appellant:**

> Luis Enrique Padilla

**Attorneys for the Defendant - Appellant:**

> Dustin C. Talbot (on appeal)
>     Appellate Chief
> Angelle R. Boudreaux (in the district court)
>     Assistant Federal Public Defender
> Cristie Gautreaux Gibbens (in the district court)
>     Interim Federal Public Defender
>     Federal Public Defender's Office
>     Middle and Western Districts of Louisiana

**Attorneys for the Government – Appellee:**

> Camille Ann Domingue (on appeal)
> Myers P. Namie (in the district court)
> Jamilla A. Bynog (in the district court)
> John Woodley Nickel (in the district court)
>     Assistant United States Attorneys

Lafayette, Louisiana, January 12, 2026.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT

## STATEMENT REGARDING ORAL ARGUMENT

The defendant-appellant, Luis Padilla, respectfully requests oral argument in this appeal, which presents issues of exceptional importance that would benefit significantly from oral presentation.

First, this case involves plain legal error in applying the Mandatory Victims Restitution Act. The district court ordered restitution under 18 U.S.C. § 3663A despite Padilla's conviction for misdemeanor deprivation of rights under color of law—an offense this Court has already determined is not a "crime of violence" under another statute's identical elements clause in *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003). The court compounded this error by misstating the statute's conjunctive requirements in the disjunctive.

Second, and in the alternative, the case presents novel questions about the limits of restitution for hypothetical future psychological treatment under section 3663A's narrow framework, particularly after *United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020), and *Lagos v. United States*, 584 U.S. 577 (2018). The record reveals serious questions about whether the victim genuinely intended treatment or instead sought pain and suffering damages disguised as medical costs.

iii

The causation analysis also raises evidentiary concerns when the expert witness failed to account for prior trauma.

Oral argument would allow this Court to explore these interrelated issues and their practical implications for Fifth Circuit restitution practice.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF CONTENTS ..................................................................v

TABLE OF AUTHORITIES ...............................................................vii

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES............................................................2

1. Whether the district court committed plain error by ordering mandatory restitution under 18 U.S.C. § 3663A, a statute that applies only to "crimes of violence," for a misdemeanor offense that this Court has already held is not a crime of violence?

2. Whether a district court may order $3,500 in restitution for psychological treatment that a victim has never sought, has never scheduled, and gave no credible indication he would ever pursue—based solely on a courthouse evaluation conducted minutes before the restitution hearing by an expert who failed to investigate whether the victim's symptoms stemmed from an earlier stabbing rather than the defendant's conduct?

STATEMENT OF THE CASE ..............................................................2

   I. Padilla's background, including his long and distinguished service to the community of Sunset, Louisiana ..........................3

   II. The offense resulted in temporary physical injury to the victim ...................................................................................4

III.    Padilla pleaded guilty to misdemeanor deprivation of rights and was sentenced to probation ...................................................6

IV.    The district court awarded $3,500 in restitution for future psychological treatment.............................................................7

    A.    The victim's sudden request for $250,000 without any supporting documents or evidence .....................................7

    B.    There was no basis for restitution at the original sentencing ............................................................................9

    C.    The government requested $5,312.08; Padilla objected to all proposed restitution .................................................11

    D.    The restitution hearing featured testimony from Dr. Dilks, who met the victim for the first time seventy-five minutes before the hearing .............................................12

    E.    The district court awarded $3,500 for future psychological treatment...................................................16

SUMMARY OF THE ARGUMENT .....................................................18

ARGUMENT .........................................................................................19

    I.    The district court plainly erred in applying the mandatory restitution provisions in Padilla's case where he was convicted of misdemeanor deprivation of rights under color of state law, which is not a crime of violence ..............................................19

    A.    Standard of review .........................................................19

    B.    The MVRA does not apply to a conviction for misdemeanor deprivation of rights under color of law ....20

    C.    The error satisfied all four prongs of plain error review .24

II.    Alternatively, the district court committed reversible error when awarding restitution for "future psychological treatment" that was hypothetical or speculative at best, and where the government failed to meet its burden of showing any harm was attributable to the offense rather than prior trauma ................................................................................. 28

    A.    Standard of review ......................................................... 28

    B.    The district court erred in ordering restitution for future psychological treatment which the victim did not intend to seek ............................................................................. 29

        1.    Applicable Law............................................................ 29

        2.    The government failed to sufficiently prove that the victim genuinely sought restitution for "future psychological treatment" .............................................. 34

    C.    The district court clearly erred in awarding restitution where the government psychologist failed to consider the extent to which another traumatic event contributed to the victim's symptoms ................................................. 37

CONCLUSION ................................................................................. 40

CERTIFICATE OF SERVICE ............................................................. 41

CERTIFICATE OF COMPLIANCE ..................................................... 41

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE</u>

*Borden v. United States*, 593 U.S. 420 (2021) ................................... 21-22

*Irvine v. California*, 347 U.S. 128 (1954) ............................................. 22

*Lagos v. United States*, 584 U.S. 577 (2018) .............................. 33-34, 37

*Paroline v. United States*, 572 U.S. 434 (2014) ..................................... 34

*Puckett v. United States*, 556 U.S. 129 (2009) ...................................... 19

*Sessions v. Dimaya*, 584 U.S. 148 (2018) .............................................. 22

*United States v. Alonso*, 740 F.2d 862 (11th Cir. 1984) ........................ 22

*United States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006) .................. 31

*United States v. Crawley*, 533 F.3d 349 (5th Cir. 2008) ........................ 29

*United States v. Danser*, 270 F.3d 451 (7th Cir. 2001) ......................... 32

*United States v. De Leon*, 728 F.3d 500 (5th Cir. 2013) ........................ 29

*United States v. Doe*, 488 F.3d 1154 (9th Cir. 2007) ............................. 32

*United States v. Hankton*, 51 F.4th 578 (5th Cir. 2022) ....... 19-20, 24, 28

*United States v. Johnson*, 94 F.4th 434 (5th Cir. 2024) ..................... 28-29

*United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020) ...............
................................................................................. 32-34, 36-37

*United States v. Langer*, 958 F.2d 522 (2d Cir. 1992) ........................... 22

*United States v. Leal*, 933 F.3d 426 (5th Cir. 2019) .............................. 19

*United States v. Messina*, 806 F.3d 55 (2d Cir. 2015)............................31

*United States v. Oslund*, 453 F.3d 1048 (8th Cir. 2006) ........................31

*United States v. Rosbottom*, 763 F.3d 408 (5th Cir. 2014) ....................19

*United States v. Sepulveda*, 64 F.4th 700 (5th Cir. 2023) ......... 30, 37, 39

*United States v. Serawop*, 505 F.3d 1112 (10th Cir. 2007)....................31

*United States v. Serrata*, 679 F. App'x 337 (5th Cir. 2017) (unpublished)................................................................30-32, 34

*United States v. Sharma*, 703 F.3d 318 (5th Cir. 2012)................... 30, 36

*United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) ................. 23, 25

## STATUTES

18 U.S.C. § 16 ...............................................................................20-21

18 U.S.C. § 242 ......................................................................... *passim*

18 U.S.C. § 924(c)(1)(A) .....................................................................23

18 U.S.C. § 2259(b)........................................................................31-33

18 U.S.C. § 3231 ................................................................................. 1

18 U.S.C. § 3663 ........................................................................... 25, 33

18 U.S.C. § 3663(a)........................................................................25-27

18 U.S.C. § 3663(a)(1)(B)(i)(II).......................................................26-27

18 U.S.C. § 3663A................................................................... *passim*

18 U.S.C. § 3663A(b)(2) ............................................................ 8, 11, 29

18 U.S.C. § 3663A(b)(2)(A) ............................................................29

18 U.S.C. § 3663A(c) ...............................................................20-24

18 U.S.C. § 3663A(c)(1)(A) ...........................................................23

18 U.S.C. § 3664(e) ..........................................................29-30, 37

18 U.S.C. § 3664(f)(1)(A) ..............................................................29

18 U.S.C. § 3742 ...............................................................................2

28 U.S.C. § 1291 ..............................................................................2

Fed. R. App. P. 52(b) .....................................................................19

x

In the
United States Court of Appeals
for the Fifth Circuit

No. 25-30500

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

*versus*

LUIS ENRIQUE PADILLA,

*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:24-CR-257-1

## ORIGINAL BRIEF FOR THE APPELLANT
## LUIS ENRIQUE PADILLA

## STATEMENT OF JURISDICTION

This matter originated in the United States District Court for the Western District of Louisiana. The district court's jurisdiction arose under 18 U.S.C. § 3231 inasmuch as the action involved an allegation of an offense against the United States. This is an appeal of a final judgment, as amended, entered by the district court on August 28, 2025.

1

ROA.124. Appellant filed a timely notice of appeal on September 2, 2025. ROA.129. As such, this Court's jurisdiction to review the matter is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1.     Whether the district court committed plain error by ordering mandatory restitution under 18 U.S.C. § 3663A, a statute that applies only to "crimes of violence," for a misdemeanor offense that this Court has already held is not a crime of violence?

2.     Whether a district court may order $3,500 in restitution for psychological treatment that a victim has never sought, has never scheduled, and gave no credible indication he would ever pursue—based solely on a courthouse evaluation conducted minutes before the restitution hearing by an expert who failed to investigate whether the victim's symptoms stemmed from an earlier stabbing rather than the defendant's conduct?

## STATEMENT OF THE CASE

The Appellant Luis Padilla, the former police chief of Sunset, Louisiana, appeals from the district court's application of the Mandatory Victim Restitution Act ordering him to pay $3,500 in restitution for

future psychological treatment following his guilty plea to a misdemeanor offense stemming from an excessive force incident. On appeal, Padilla challenges the district court's authority to even impose restitution for the misdemeanor non-crime of violence offense in this case and, in the alternative, whether the actual restitution ordered was an abuse of discretion.

## I.    Padilla's background, including his long and distinguished service to the community of Sunset, Louisiana

At the time of his arrest on this offense, Padilla was 66 years old, the Chief of Police in the small town of Sunset, Louisiana. He had no prior convictions. *See* Doc. 57 – Presentence Investigation Report (PSR) p.7.[1] To the contrary, he was a dedicated family man known for his long and distinguished service to the community of Sunset, Louisiana. *See, e.g.*, Doc. 62-1 – Letters of Support, Letter of Tammy Stelly (describing Mr. Padia as "a family man, friend, volunteer fire fighter, volunteer first responder, policemen). Doc. 62-1, p.1-5.

---

[1] At the time of the filing of this brief, the Clerk's Office for the Western District of Louisiana is providing all sealed documents without appeal record pagination. Because there are no ROA citations on these documents, they will be cited to the document number used in the district court.

## II.    The offense resulted in temporary physical injury to the victim

On the morning of December 1, 2023, while on duty, Chief Padilla used excessive force against a suspect's husband in his zeal to locate a suspect who was on the run with a potentially injured child. That morning, officers from the Sunset Police Department responded to the scene of a hit and run. A woman had crashed her vehicle into a fence and fled the scene of the accident with a young child under pursuit by police. Doc. 62, p. 5; Doc. 57, p.4.

Padilla did not attend the scene of the hit and run but heard reports of the incident on the police radio. Doc 62, p.6. Concerned about the welfare of the child and the fleeing fugitive, he went immediately to the suspect's home.[2] Doc. 62, p.6; Doc. 57, p.4. It was here that Padilla encountered the victim who was the suspect's husband, and under the pressure of the evolving situation, used the excessive force that forms the basis of these charges. When the victim told Padilla that he had not seen his wife and child, Padilla became upset and handcuffed him

---

[2] Ultimately the fleeing suspect and her child were located. The child was at a relative and neighbor's house across the street. A medic observed that the child was caked in mud from the waist down and had suffered a "contusion" to the head. Doc 62 at p. 8. The child was later seen at the Our Lady of Lourdes E.R. for his injuries from a "motor vehicle accident," and treated with ice and pain medication. Doc 62 at p. 8; Doc. 62-2 (Child's Medical Records).

4

aggressively. During the ensuing interaction, Padilla poked the victim in the chest and neck, yelled at him threatening to show him he was a "bad man," and "forcefully twist[ed] the victim's thumb and wrist." Doc. 62, p.8; Doc 57, p.4.

The government confirmed below that the sharp pain was "temporary." ROA.200. The victim can be seen a short time later using the injured wrist, while cuffed, to lift and move a case of water and large baskets of laundry across the floor inside his home. Ex. 3 to Doc. 62, Body Cam Footage (8:45-9:15) (Manual Exhibits).

Later that evening, the victim sought treatment at the local hospital. He was treated for a sprain of his left thumb and wrist and prescribed five days of pain medication and a muscle relaxant. The doctor recommended that he follow-up with his primary care physician. Doc 57, p.4; Doc. 62-4 (Victim's 's Medical Records). The victim incurred no financial costs for this treatment because it was covered by his medical insurance. Doc. 73-1 – Government Memorandum in Support For Restitution, p.2.

During the investigation, an officer on scene heard the victim state that he had previously injured the same wrist when he was stabbed, and

had needed surgery. Doc. 62 at p. 9. His medical records noted that he told medics "he had a prior injury to that same wrist." Doc. 62-4.

### III. Padilla pleaded guilty to misdemeanor deprivation of rights and was sentenced to probation

Padilla was originally charged with *felony* deprivation of rights under color of law in violation of 18 U.S.C. § 242. ROA.13. On March 19, 2025, Padilla pleaded guilty to one count of *misdemeanor* deprivation of rights under color of law in violation of 18 U.S.C. § 242. ROA.220. He resigned from his position as Chief of Police and agreed not to seek employment with law enforcement during any term of probation or supervision. ROA.220-21. The government agreed to dismiss the felony indictment and agreed to imposition of a probationary sentence. ROA.221.

On June 17, 2025, the district court sentenced Padilla to five years of probation with the first six months served under home incarceration. ROA.203-207. The court adopted the presentence investigation report without change and relied upon it to "form the factual basis" for sentencing. ROA.196; Doc. 71 – Statement of Reasons, p.1. Notably, the court imposed no fine, finding that Padilla lacked "the ability to pay" one. ROA.210.

6

IV. **The district court awarded $3,500 in restitution for future psychological treatment**

At the time when Padilla entered his guilty plea, restitution was a non-issue because the government believed that the victim would not request it. ROA.146. Accordingly, the plea agreement did not address the amount of restitution award nor did Padilla agree to pay restitution in the plea agreement. Likewise, at the Change of Plea hearing held on March 19 2025, the government confirmed that victim was not seeking restitution − "Not that I am aware of Your Honor." ROA.146. The court asked the government to speak to the victim to "make sure." ROA.146.

A. **The victim's sudden request for $250,000 without any supporting documents or evidence**

A presentence report was submitted on May 12, 2025. Doc. 57. It concluded that the Mandatory Victim Restitution Act 1996 applied "to this Title 18 offense," which required the court to order restitution. Doc. 57, p.13 (citing 18 U.S. C. § 3363A). It reported that the victim was now requesting $250,000 in restitution: "[The victim] submitted a Declaration of Victim Losses "requesting restitution in the amount of $250,000.00, for pain and suffering, emotional distress (loss of a child), moving expenses, public embarrassment, and post-traumatic stress." Doc. 57, p.6. The

7

victim elaborated on this in a Victim Impact Statement, quoted in full in the PSR. Doc. 57, p.5-6. He describes the distress he felt at the time of the incident and since, his fear of Padilla, his vulnerability to abuse as a Black man, how his wife miscarried due to the stress, and how they moved out of Sunset Louisiana to avoid further persecution by Padilla and the entire Sunset Police Department. Doc. 57, p.5-6. In doing so, he exaggerated his injuries claiming that his wrist was "fractured" during the altercation, Doc. 57, p.5, although he only suffered a sprain. Doc. 62-4. He provided no proof or verifiable details of any specific losses. Doc. 57, p.6.

In an objection to the PSR, Padilla objected to the restitution request on the basis that nothing in the victim's Declaration was covered under 18 U.S.C. § 3663A(b)(2)-(4), which strictly limits restitution to the actual costs of treatment, lost income, and various expenses incurred during participation in the investigation or prosecution of the case. Doc. 61-1, p.1 (citing 18 U.S.C. § 366A(b)(2)-(4)).

The Probation Office responded clarifying that its reference to the Declaration was informational, and was not a recommendation by the Probation Office. Doc. 61-1, p.1. It confirmed that "no other

8

documentation was provided to the Probation Officer in order to provide a detailed summary of the victim's losses," and indicated that it would be for "the Court . . . to determine the appropriate amount of restitution to order." Doc. 61-1, p.1.

The government made unsuccessful attempts to determine the specifics of the victim's losses in time for sentencing and requested deferral of the restitution determination until after sentencing. ROA.109 (stating that despite being "in communication" with the victim, their losses "are not yet ascertainable, and noting that their claims are mixed with amounts that were "not supported by law").

## B.    There was no basis for restitution at the original sentencing

At the original sentencing hearing held on June 17, 2025, the government conceded that the physical injury to the victim caused only "a temporary physical pain," ROA.200, and focused on emotional injury. It called the victim to allocate, and he did so by reading from the Victim Impact Statement quoted in the PSR. ROA.201-03.

The defense submission included a copy of the dash-cam video showing images of the victim moving heavy items using the injured wrist. Ex. 3 to Doc. 62, Body Cam Footage (8:45-9:15) (Manual Exhibits).

Counsel also submitted a copy of the victim's medical records documenting both his treatment for a "sprain" and the victim's reference to the "prior injury to that same wrist" Doc. 62-4. The sentencing memorandum referenced the victim's comment about being victim to a stabbing that required surgery which was contained in the police reports. Doc. 62, p.9.

After Padilla was sentenced, the parties discussed the upcoming restitution hearing with the court. The government conceded that "pain and suffering is not an issue." They indicated that the claim would involve reimbursement for past costs, as they were "working with the victim" to "get actual expenses, copays. They had to move and other things." ROA.212.

When the court drew the government's attention to the MVRA list of "things that must be considered for a physical injury," the government reassured the court that "we met with the victim, Judge, throughout the process and specifically on that." ROA.212. The government did not mention that the victim wanted or needed psychological treatment.

However, four weeks later, the government's restitution request rested nearly exclusively on "future" psychological treatment.

10

## C.    The government requested $5,312.08; Padilla objected to all proposed restitution

On July 8, 2025, government filed a Memorandum in Support of Restitution asserting that the mandatory restitution provisions of 18 U.S.C. § 3663A(b)(2) and (4) applied, and requesting restitution of $5,312.08. Doc. 73-1, p.1. The government explained that $312.02 was for alleged expenses incurred when the victim moved out of Sunset following the incident. These included the cost of a moving truck rental ($62.13), a cable reconnection fee ($19.95) and a week-long hotel stay ($230). Doc. 73-1, p.2-3. However, the government offered no evidence relating to the hotel stay, and the receipts provided for the Penske truck rental, and a cable bill, did not show who paid them. Doc. 73-3, Doc 73-4.

Lacking anything else with an iota of proof, the remainder of the $5,000 was for the costs of future psychological treatment. The government claimed that the victim had "requested therapy on multiple occasions," and stated that he exhibited "signs of post-traumatic stress syndrome (sic)." Doc. 73-1, p.3. It explained that the $5,000 was determined after consulting a Dr. Larry Dilks. The government asserted that Dilks' charged $250 an hour, and that Dilks had "reviewed case information," and "recommended 20 sessions of treatment for [the

11

victim].” Doc. 73-1, p.4. The government did not attach a fee schedule, or any report concerning this recommendation, nor evidence that the victim wanted or contemplated treatment.[3] But stated they would call Dr. Dilks to testify at the upcoming hearing to verify the claim. Doc. 73-1, p.4.

Padilla filed an opposition opposing the entirety of the restitution proposal. Doc 76. Defense did not challenge the applicability of the mandatory restitution statute but vigorously challenged the government's failure to meet its burden of proof under its provisions. Doc. 76.

D.     **The restitution hearing featured testimony from Dr. Dilks, who met the victim for the first time seventy-five minutes before the hearing**

The Restitution Hearing was held on August 27, 2025.  The court dismissed the claim for moving expenses, finding that they were not covered under the statute, and insufficiently substantiated. ROA.162, 192. The main focus of the hearing was the claim for future psychological treatment.

---

[3] The only record of treatment the government submitted was a financial summary of charges relating to the victim's E.R. visit, Doc. 73-2, Ex. B. However, as the government conceded, those costs were paid by Insurance or written off, Doc 73-1, p.2; Doc. 73-2, and were not even part of the restitution request. ROA.163.

The government presented the testimony of Dr. Dilks to establish the basis for the claim. Dr. Dilks testified that he reviewed the video and victim's "allocution," and evaluated him for "one hour and fifteen minutes." ROA.167. In this brief meeting, he was able to determine both that the victim exhibited symptoms of Post-Traumatic Stress Disorder, and that these were related to the incident with Padilla. ROA.168. As to the latter, he testified that he asked the victim about his history, and determined that there were no other traumatic events in the victim's life that he could attribute this kind of emotional reaction to. ROA.168. He described the victim's distress when discussing the incident, and that the victim told him that he wanted to "talk to someone." ROA.169. He stated that his recommendation for 20 hours of treatment was based on the "industrial standard" of what insurance companies will reimburse, and that the $250 hourly rate was the typical forensic rate in Southern Louisiana, although it ranges between $150 and $300. ROA.179-80.

On cross-examination, Dr. Dilks revealed that his evaluation of the victim had taken place that morning in the conference room of the courthouse, right before the hearing. ROA.172. He had not met the victim before that day; the victim had never had an appointment at his office,

nor sought treatment from him. ROA. 172. The victim had no future appointments with him either. ROA.175. The victim reported no prior mental health treatment at all. ROA.177.

When questioned about the victim's prior stabbing, Dr. Dilks revealed that he was unaware of it, the victim had not told him about it, ROA.175, and he had not read the police report where it was mentioned. He explained that he had only asked the victim about prior physical or sexual abuse and whether he was in the military, but "didn't go into all of the events in his life that he might have been traumatized by." ROA.176. Dr. Dilks acknowledged that being stabbed could "possibly" cause someone to get PTSD. ROA.176.

When questioned how he had been able to recommend treatment before seeing the victim, Dr. Dilks denied that he had done so, ROA.177-78, contrary to representations made in the government's memorandum. Doc. 73-1, p.3.

The court also questioned Dr. Dilks. Specifically, it queried how he could "link the emotional distress that [the victim] has to this incident." ROA.179. Dr. Dilks reiterated that the victim denied physical or sexual abuse and had not been in the military. He did not address the prior

14

stabbing, explain how he ruled that out as a cause, nor explain how he affirmatively determined the incident was the cause. ROA.179. On redirect examination he confirmed, when asked, that the victim told him all of his symptoms arose after the incident with Padilla. ROA.181.

On further questioning by the court, Dr. Dilks revealed that his rate was $145 an hour, ROA.178, not the $250 asserted in the government's memorandum. Doc. 73-1, p.3 ("Dr. Dilks' rate per hour is $250.00 for a total of $5,000 for all sessions"). He testified the going rate in Lafayette was $160, $175 an hour. ROA.178.

The government presented no other evidence. It did not call the victim to testify about whether he intended to seek treatment, or the nature and duration of any such treatment, although he was present at court that day.

In argument, Defense counsel vigorously opposed the restitution claim. Counsel argued that the government failed to meet its burden of proof, and it was "purely speculative" whether the victim would even seek treatment. ROA.190. Counsel argued that the claim was an effort to obtain tortious relief rather than reimbursement for actual expenses. ROA.190. Counsel flagged the discrepancies concerning the appropriate

hourly rate. ROA.190. Finally, defense argued that the government had not sufficiently proven any psychological harm was proximately caused by defendant's action, given that the Doctor had not explored the impact of the victim's prior stabbing with him. ROA.189-90.

**E.    The district court awarded $3,500 for future psychological treatment at $175 per hour but denied relocation expenses**

The court ordered restitution of $3,500 for "future psychological treatment." ROA.192. The court ordered Padilla to pay the restitution "immediately", or if he is financially unable to do so, "in monthly installments of at least $300 per months beginning 60 days after completion of sentence." ROA.192-93.

The court found that Dr. Dilks' testimony "was credible" and "established causation of the necessity of this treatment." It rejected the government's proposed rate of $250, but ordered 20 hours at $175 an hour, the rate Dr. Dilks testified was the rate in Lafayette. ROA.192.

The court expressly stated its order was made pursuant to 18 U.S.C. § 3663A. ROA.192 (". . .the defendant shall pay restitution in the amount of $3,500 pursuant to 18 U.S.C. § 3663A to [the victim]). Padilla objected to the court's order. ROA.192.

16

The court entered a written "Amended Judgment in a Criminal Case" on August 28, 2025, including the terms of the restitution order as orally pronounced. ROA.124. Padilla filed a timely notice of appeal on September 2, 2025. ROA.129.

## SUMMARY OF THE ARGUMENT

The district court plainly erred in applying the mandatory restitution provisions of 18 U.S.C. § 3663A and ordering Padilla to pay $3,500 in restitution. Misdemeanor deprivation of rights under color of state law is not a "crime of violence" and § 3663A plainly does not apply. The court misstated the statute as applying wherever there was an identifiable victim who suffered injury, regardless of the offense of conviction. The court is unlikely to have awarded discretionary restitution because it found that Padilla financially unable to pay a fine, and the court was required to consider the same financial factors in determining restitution.

Alternatively, the court erred in awarding future psychological treatment, because the evidence showed that the victim did not genuinely seek the award for treatment but for pain and suffering which is not compensable. The court clearly erred when finding that any psychological harm was caused by Padilla's acts during the offense because the testifying psychologist on whose testimony the court relied, failed to consider or question the victim about prior trauma which the psychologist conceded could cause PTSD.

18

## ARGUMENT

I.   **The district court plainly erred in applying the mandatory restitution provisions in Padilla's case where he was convicted of misdemeanor deprivation of rights under color of state law, which is not a crime of violence**

### A.   Standard of review

This Court applies plain error review where an issue is unpreserved. *See e.g., United States v. Leal,* 933 F.3d 426, 430 (5th Cir. 2019) ("We review the district court's restitution order for plain error under Rule 52(b) because Leal did not object below."); *United States v. Rosbottom,* 763 F.3d 408, 419 (5th Cir. 2014) (same). To establish plain error, a defendant must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States,* 556 U.S. 129 (2009). If these requirements are met, Court has discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 135.

The Court has recognized that the erroneous application of U.S.C. § 3663A to a defendant whose conviction does not qualify for mandatory restitution is plain error. *See United States v. Hankton,* 51 F.4th 578, 595 (5th Cir. 2022) (finding erroneous application of mandatory

19

restitution provisions to convictions for an offense that was not "crime of violence" was plain error).

B.    The MVRA does not apply to a conviction for misdemeanor Deprivation of Rights Under Color of Law

The district court plainly erred by relying on an inapplicable statute when ordering restitution. The PSR stated that Padilla's was subjected to the mandatory restitution provisions of 18 U.S.C. § 3663A. Doc. 57, p.13. Neither party objected to this assertion and relied on 18 U.S.C. § 3663A as the applicable statute in their briefing. Doc. 73-1, p.1-2; Doc. 76, p.5. The court adopted the PSR in full and ordered restitution expressly pursuant to those provisions.  ROA.192.

This was clearly erroneous because Padilla's conviction for misdemeanor deprivation of rights under color of law pursuant to 18 U.S.C. § 242 does not fall within the narrow range of cases within the scope of the statute. The statute expressly and exclusively defines its applicable scope in subsection (c). Subsection (c) provides, in relevant part, that the provisions apply to sentencing proceedings for an offense:

(A) that is—

    (i)    *a crime of violence, as defined in section 16;*
    (ii)   an offense against property under this title, or under section 416(a) of the Controlled Substances

20

Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;

(iii)  an offense described in section 3 of the Rodchenkov Anti-Doping Act of 2019;

(iv)  an offense described in section 1365 (relating to tampering with consumer products); or

(iv)  an offense under section 670 (relating to theft of medical products); *and*

(B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(c) (emphasis added).

18 U.S.C. § 16(a), in turn, defines "crime of violence" to include "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[4] This is referred to as the elements clause and to decide whether an offense satisfies the elements clause, courts use the categorical approach. *Borden v. United States*, 593 U.S. 420, 424 (2021). Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the

---

[4] Subsection (b) of §16 extends the definition to including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." It is facially inapplicable because it expressly only applies to "felony" offenses. This provision has also been held to be unconstitutional. *See Sessions v. Dimaya*, 584 U.S. 148 (2018)

21

statute of conviction as an element the use, attempted use, or threatened use of physical force against the person or property of another. *Id.*

In the case of misdemeanor deprivation of rights under color of law under 18 U.S.C. § 242 the answer is clearly no. While the "deprivation of rights" element was met in Padilla's case by the excessive use of force, that element can be met by depriving a person of *any* federal Constitutional or legal right countless of which can be violated without the use of "physical force." Courts have recognized violations of § 242 in numerous scenarios that do not involve the use of force or threatened force. *See, e.g., Irvine v. California*, 347 U.S. 128, 137 (1954) (police officers who made a key to illegally gain entry to person's home and install microphones to obtain evidence of a crime were criminally liable under § 242); *United States v. Alonso,* 740 F.2d 862, 872-73 (11th Cir. 1984) (upholding conviction of police officer under § 242 for thefts of money from the property room of the police station); *United States v. Langer*, 958 F.2d 522, 524 (2d. Cir. 1992) (upholding § 242 conviction of police officer who illegally detained female motorists in violation of their Fourth Amendment rights, even if he "merely stopped his victims in order to engage them in conversation").

22

Indeed, this Court has expressly found that misdemeanor deprivation of rights under color of state law is not a "crime of violence" under the identical elements clause in 18 U.S.C. § 924(c)(1)(A), which applied to certain federal gun charges. In *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003), this Court held that misdemeanor deprivation of rights under color of law "is not a 'crime of violence'" because its elements "do not include the use, attempted use, or threatened use of physical force." *Id.* at 432.[5] Under *Williams,* Padilla's conviction under misdemeanor deprivation of rights under color of state law is not a crime of violence.

In reaching its clearly erroneous conclusion that 18 U.S.C. § 3663A applied in Padilla's case, the district court expressly misstated the provisions of subsection (c). Under 18 U.S.C. § 3663A(c), the offense must not only meet the definition of 18 U.S.C. § 3663A(c)(1)(A) (encompassing a "crime of violence"), it must also meet subsection (B), that "an identifiable victim . . . has suffered a physical injury or pecuniary loss." However, the district court erroneously worded the requirements of (A)

---

[5] The defendant in *Williams* was ultimately determined to have committed a crime of violence because he was convicted of the felony version of § 242 that has separate element, bodily injury or use of a dangerous weapon, that satisfies the elements clause. 343 F.3d at 432.

23

and (B) in the disjunctive ("or") so that the statute applied even if only one of those requirements were met. ROA.191 (Stating that "Pursuant to 18 U.S.C. § 3663A, the Court is required to enter a restitution order when a defendant is found to have committed a crime of violence in offense against property or where there's an identifiable victim who suffers a physical injury or monetary loss.").

Under the court's erroneous definition, the court wrongly believed that the statute applied to Padilla's case given that there was "an identifiable victim who suffers a physical injury or monetary loss" satisfying Subsection B. Whether or not the court applied 18 U.S.C. § 3663A based on this erroneous interpretation or whether the court erroneously assumed that the conviction was for a "crime of violence," its legal error is clear.

## C.    The error satisfied all four prongs of plain error review

The district court's error satisfies the requirement for plain error reversal. This Court has reversed mandatory restitution under plain error review for just this type of egregious legal error. *United States v. Hankton,* 51 F.4th 578, 595 (5th Cir. 2022) (under plain error review, reversing mandatory restitution order based on an erroneous finding that

24

RICO convictions were a "crime of violence"). The Court should do the same in this case.

*First,* the error was not intentionally relinquished or abandoned. Although Padilla did not object to the restitution order on this basis, he vigorously opposed it on other grounds showing that never consented to restitution or agreed that the restitution order was appropriate.

*Secondly,* the error is clear and obvious and not subject to reasonable dispute. The district court expressly misstated the law on the statute's application, and there is clear precedent from this Court finding that a misdemeanor offense under 18 U.S.C. §242 is not a "crime of violence" as when interpreted under a provision with identical language. *Williams,* 343 F.3d at 423.

*Third*, the error affected Padilla's substantial rights. The plea agreement did not include any agreement by Padilla to pay restitution. The only other authority for potential award of restitution was 18 U.S.C. § 3663(a) which grants the court discretionary authority to impose restitution in cases not covered by 18 U.S.C. § 3663A. However, 18 U.S.C. § 3663(a) limits recovery of restitution to certain types of losses listed in the statute which were not sufficiently proven in the court. *See § II infra,*

25

(arguing that the court committed reversible error when ordering restitution pursuant to the identical provisions of 18 U.S.C. § 3663A).

Even assuming that there were compensable losses eligible for a discretionary award under 18 U.S.C. § 3663(a), the court was bound to take into account other factors which weigh heavily against a discretionary grant of restitution. Under 18 U.S.C. § 3663(a), the court must "consider. . . the financial resources . . . financial needs, and earning capacity of the defendant" 18 U.S.C. § 3663(a)(1)(B)(i)(II).

This is in stark contrast to orders under 18 U.S.C. § 3663A where the court is *prohibited* from considering the defendant's financial situation. 18 U.S.C. § 3663A(a)(1)(A) ("court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.").

In this case, the court did consider Padilla's financial situation when deciding to forego the imposition of any fine on Padilla and expressly found that he "does not have the ability to pay." ROA.210. The court expressly adopted the findings and factual basis of the PSR which had reached a similar conclusion after reviewing the detailed financial

information provided by Padilla's Cash Flow and Net Worth Statement Forms and an Accurint Search, summarized in the PSR. Doc. 57 at 9-10.

The PSR shows that Padilla was a 66-year-old man, Doc. 57, p.2, of modest means, who was now prohibited under the terms of his plea agreement from working in his long-time field of law enforcement. ROA. 1-2. His personal income was limited to Social Security Retirement benefits, and his wife's modest $1,800 a month income. Doc. 57, p.10-11. Among other constraining factors, he had an outstanding mortgage of $50,000 on the small two-bedroom house, had credit card debt of over $7,500, and car loan of $45,000 with significant negative equity. Doc. 57, p.11. The government did not dispute the information nor the court's findings.

The court would be obliged to consider this same information when deciding whether to exercise its discretion to award restitution. 18 U.S.C. § 3663(a)(1)(B)(i)(II). It is reasonably likely that when considering these same factors, the court would reach the same conclusion and decline to order restitution due to his inability to pay or reduce the award significantly.

Any residual doubts about the genuineness or validity of the victim's request for the costs of psychological treatment might further have given the court pause. *See further* § II *infra.*

*Fourth* the error, by its very nature, affects the fairness, integrity and public reputation of judicial proceedings. The rule of law fundamentally requires courts to comply with statutes. Moreover, awarding restitution without considering Padilla's limited financial capacity undermined the integrity of the sentencing process, where the court had already found he would be unable to pay any fine. This fundamental clear legal error requires vacatur and remand. *Hankton,* 51 F.4th 578.

## II. Alternatively, the district court committed reversible error when awarding restitution for "future psychological treatment" that was hypothetical or speculative at best, and where the government failed to meet its burden of showing any harm was attributable to the offense rather than prior trauma

### A. Standard of Review

When issues have been preserved for appeal, this Court reviews "the legality of a restitution order de novo and factual findings, including the amount of loss incurred, for clear error." *United States v. Johnson*, 94 F.4th 434, 439-40 (5th Cir. 2024). "'[P]reserved error as to the quantum

of a restitution award' is reviewed for an abuse of discretion." Id. at 440 (quoting *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013)). An abuse of discretion occurs when a court's "ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Johnson*, 94 F.4th at 440 (quoting *United States v. Crawley*, 533 F.3d 349, 358 (5th Cir. 2008)). The government bears the burden of proving restitution amounts by a preponderance of the evidence. 18 U.S.C. § 3664(e).

### B. The district court erred in ordering restitution for future psychological treatment which the victim did not intend to seek

#### 1. Applicable Law

The MVRA strictly limits restitution to a circumscribed type of losses exclusively listed in the statute. As relevant here, 18 U.S.C. § 3663A provides that "in the case of an offense resulting in bodily injury to a victim" the district court shall order a defendant to pay "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care." 18 U.S.C. § 3663A(b)(2)(A). The district court must order restitution for "the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A).

As this Court has made clear, the purpose of restitution under the MVRA is to compensate victims for *actual losses*, "not to punish defendants for ill-gotten gains." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012). Recovery is limited "to the *actual loss* directly and proximately caused by the defendant's offense." *Id.* at 323 (emphasis added). The government bears the burden of proof by a preponderance of the evidence. 18 U.S.C. § 3664(e). "[E]very dollar must be supported by record evidence." *Sharma*, 703 F.3d at 323. "An award of restitution greater than a victim's *actual loss* exceeds the MVRA's statutory maximum. *Sharma*, 703 F.3d at 322, and constitutes an illegal sentence. *United States v. Sepulveda*, 64 F.4th 700, 713 (5th Cir. 2023).

The question of whether 18 U.S.C. § 3663A allows a court to order restitution for future psychological treatment where a victim does not intend to use it for treatment is a matter of first impression for the court. The government cites just one case in support of its claim for future treatment costs: this Court's unpublished decision in *United States v. Serrata*, 679 Fed. Appx. 337 (5th Cir. 2017) (unpublished). However, in *Serrata,* the victim was already receiving mental health treatment so there was no question about the victim's intent. *Id.* at 339.

30

Importantly, in *Serrata,* this Court was considering the question of whether future treatment was covered for the first time, and it did so under plain error review. Applying that deferential standard, it rejected the challenge to victim's legitimate request for treatment costs, with little analysis, in light of cases cited by the government upholding awards of restitution for future costs. *Seratta,* 679 Fed. Appx. at 340.

As the Court acknowledged, many of the cases the Court relied upon were about loss of future income, and therefore inapposite. *See Seratta,* 679 Fed. Appx. at 340 (citing *United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015) (ordering restitution for lost future income under § 3663A following a death); *United States v. Serawop*, 505 F.3d 1112, 1120 (10th Cir. 2007) (same); *United States v. Cienfuegos*, 462 F.3d 1160, 1163-64 (9th Cir. 2006) (same); *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006) (same)).

Nearly all the others were decided under a completely different statute, 18 U.S.C. § 2259(b), which provides for more expansive restitution and permits more speculative determinations in the unique context of the sexual exploitation of children. In addition to specific losses similar to those included in 18 U.S.C. § 3663A, 18 U.S.C. § 2259(b)

includes a broad catch-all category of eligible losses covering: "any other losses suffered by the victim as the proximate result of the offense" which does not appear in 18 U.S.C. § 3663A. 18 U.S.C. § 2259(b)(3)(F). The decisions relied upon by the *Serrata* Court are expressly based on this language and the legislative intent to provide generous restitution in child abuse cases, and "make the victim whole."

For example, in *United States v. Danser*, 270 F.3d 451 (7th Cir. 2001), the Seventh Circuit explained that in enacting section 2259, "it is clear that Congress intended to provide victims of sexual abuse with expansive relief." *Id.* at 455. Likewise, in *United States v. Doe*, 488 F.3d 1154 (9th Cir. 2007), the Ninth Circuit explained that 18 U.S.C. § 2259(b) is phrased "in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long-term effects of their abuse." *Id.* at 1160. The other cases relied on by the *Serrata* Court relied on the same rationale, or cite cases which rely on the same rationale.

However, in *United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020), this Court explicitly found that this "make the victim whole" approach is inapplicable to the narrower provisions of § 3663A, which do

32

not include the "proximate losses" clause, and are limited to the enumerated categories. *Id.* at 310. In doing so, the Court followed Supreme Court's decision in *Lagos*, which likewise advocated a narrower construction of § 3663A based on this precise distinction.

> Some of those statutes specifically require restitution for the "full amount of the victim's losses," defined to include "any . . . losses suffered by the victim as a proximate result of the offense." *See* 18 U.S.C. §§2248(b), 2259(b), 2264(b), 2327(b).
>
> The Mandatory Victims Restitution Act, however, contains no such language; it specifically lists the kinds of losses and expenses that it covers. Moreover, in at least one other statute Congress has expressly provided for restitution of "the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." §3663(b)(6).
>
> Again the Mandatory Victims Restitution Act has no similar provision. And given those differences between the Mandatory Victims Restitution Act and other restitution statutes, we conclude [****13] that the considerations we have mentioned, particularly those based on a reading of the statute as a whole, tip the balance in favor of our more limited interpretation.

*Lagos v. United States*, 584 U.S. 577, 584 (2018) (paragraph breaks added).

Restitution under 18 U.S.C. § 3663A is far narrower than civil damages, and this Court has expressly warned against impermissibly

33

"importing tort law into criminal restitution." *Koutsostamatis*, 956 F.3d at 310 (citing *Paroline v. United States*, 572 U.S. 434, 453 (2014) ("Aside from the manifest procedural differences between criminal sentencing and civil tort lawsuits, restitution serves purposes that differ from (though they overlap with) the purposes of tort law.").

*Serrata* was decided before both *Lagos* and *Koutsostamatis* and arguably must be revisited in light of that ruling. However, the Court need not decide that issue in this case. It is certainly clear, in light of the restrictive language of the statute and the government's strict obligation to prove "actual losses" suffered by the victim as a result of the offense, that ordering *future treatment that the victim has no intention of obtaining* does not fall within the remit of the statute and is legal error. The court did precisely that in this case, and this Court should reverse and remand.

> **2.    The government failed to sufficiently prove that the victim genuinely sought restitution for "future psychological treatment"**

The government claimed in argument that "we're not talking about pain and suffering. We're talking about specifically going in and getting the help that [the victim] needs, and we certainly met our burden for

34

that." ROA.186. The only evidence that even vaguely suggested that the victim might seek treatment, was Dr. Dilks' assertion that the victim told him "he wanted to talk to someone." ROA.169. This without more was insufficient to demonstrate any genuine desire for professional help.

To be sure, the record evidence belies otherwise. As the record establishes, the victim had not sought any psychological treatment in the 20 months between the incident and restitution hearing, although financial records show he had health insurance at least at the time of the incident. Doc. 73-2 (showing "insurance" payment). ROA.177. Indeed, the first time he saw a mental health practitioner was the morning of the restitution hearing when he met with a psychologist – the psychologist the government provided and relied upon almost exclusively in making his case for restitution. ROA.172. Neither was there any evidence that the victim had made any plans to obtain treatment in the future.

Rather, the evidence shows what defense counsel argued to the court, – the victim was really seeking recovery for "pain and suffering." ROA.190 ("this request for restitution . . .looks[s] more like a request for pain and suffering because it's not clear that [the victim] is going to follow through with this.").

35

It was "clear" however, that the victim wanted a large civil damages type payment. When he was asked about restitution during the presentence investigation, he submitted a Declaration of Victim Losses "requesting restitution in the amount of $250,000.00, for pain and suffering, emotional distress (loss of a child), moving expenses, public embarrassment, and post-traumatic stress." Doc. 57, p.6. He did not include details of any specific losses, and not say that he needed or wanted psychological treatment.

It was not until after the sentencing hearing where the government "conceded that pain and suffering" was not an issue, ROA.212, and it was clear that the victim could not prove any recoverable losses under restitution statute, that the victim's request for money to pay for "future treatment" came up. Based on this record, the government failed to meet its burden of proving that the restitution represented "actual losses" as opposed to pain and suffering. *See Sharma*, 703 F.3d at 323. Indeed, payment to compensate for the psychological harm itself is the very definition of pain and suffering, not "future psychological treatment." The court abused its discretion in awarding restitution for this hypothetical future treatment, that is not contemplated under the narrow restitution

36

framework of the MVRA. *See Lagos*, 584 U.S. at 584; *Koutsostamatis*, 956 F.3d at 310.

### C. The district court clearly erred in awarding restitution where the government psychologist failed to consider the extent to which another traumatic event contributed to the victim's symptoms

The district court clearly erred in awarding restitution for treatment of psychological harm because the government's expert failed to take into account evidence that the victim had suffered a prior trauma which he conceded could have resulted in post-traumatic stress disorder.

Under 18 U.S.C. § 3663A, the government bears the burden of proving the loss sustained "as a result of the offense." 18 U.S.C. § 3664(e). The sentencing court must resolve any dispute as to the amount of restitution "by the preponderance of the evidence." *Id.* As this Court has held, this framework first requires the government to "carry its burden of demonstrating the actual loss . . . by a preponderance of the evidence," and "[t]hen the defendant can rebut the [g]overnment's evidence." *Sepulveda*, 64 F.4th at 714 .

In this case, the district court expressly relied on the testimony of Dr. Dilks when finding that the government had met its burden.

ROA.192. (stating that it found Dr. Dilks' testimony to be "credible" and that it "established causation of the necessity of this treatment.").

On direct examination, Dr. Dilks testified that based on his evaluation of the victim that morning, he found the victim exhibited symptoms of PTSD and that he had concluded they were related to the incident with Padilla. ROA. 167. However, on cross-examination, it became clear that Dr. Dilks was unaware that the victim had been the victim of a prior stabbing. ROA.175. He did not read the victim's medical records, or the police reports which referenced the prior stabbing or injury, ROA.175, 176-7, and did not ask the victim about it. ROA. 175-76. Importantly, Dr. Dilks acknowledged that a stabbing could cause PTSD. ROA.176. However, despite questioning on the subject by both counsel and the court, he failed to adequately address the obvious question this raised; whether the PTSD symptoms he observed were in whole or in part due to this prior incident. ROA.175-180-81. Instead, he responded to questions from both the defense and the court by reiterating that he did not discuss it with the victim. He stated that his questioning of the victim about prior traumatic incidents was limited to whether he had been the victim of physical, sexual or emotional abuse, whether he

38

had been in the military, and whether there were any incidents that traumatized him. ROA.176, 179-80. He also explained to the court how he eliminated diagnoses other than PTSD, but again that did not address the cause of the PTSD. ROA.179-80. On redirect, Dr. Dilks confirmed, when asked by the government, that the victim's anxieties and symptoms were triggered after the traumatic event, ROA. 181, but again, he had not questioned the victim about the stabbing.

The court's finding that Dr. Dilks' testimony established the causal necessity of the recommended treatment, was clear error in light of Dilks' failure to address the prior incident. Dilks admitted that a prior stabbing could result in PTSD. ROA.176. The government failed to meet its burden of proving "every dollar" of the loss by a preponderance of the evidence, and the court's restitution order should be reversed. "Restitution that exceeds the court's statutory authority is an illegal sentence." *Sepulveda*, 64 F.4th 700, 712 (finding on the facts that the district court had appropriately reduced a restitution award for lost income, by the amount attributable to income lost due to the impact of the COVID-19 pandemic). Alternatively, the Court should remand for further assessment to

determine the extent to which the victim's symptoms are related to prior trauma.

## CONCLUSION

For the foregoing reasons, appellant Luis Padilla respectfully requests that the Court vacate the district court's restitution remand with instructions for the district court to order the return of all restitution payments made by Padilla.

Respectfully submitted,

CRISTIE GAUTREAUX GIBBENS
Interim Federal Public Defender

BY:   *s/ Dustin C. Talbot*
        DUSTIN C. TALBOT
        Appellate Chief
        Federal Public Defender's Office
        Middle and Western Districts of Louisiana
        102 Versailles Boulevard, Suite 816
        Lafayette, Louisiana 70501
        Telephone: (337) 262-6336

        *Attorney for the Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been served by the 5th Circuit electronic filing system on the Assistant United States Attorney, on January 12, 2026.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,787 words.

2.  This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14 point font.

Lafayette, Louisiana, January 12, 2026.

*s/Dustin C. Talbot*
DUSTIN C. TALBOT

41